960 A.2d 108

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Bruce Alan CHASE, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 13, 2006.

Decided Nov. 26, 2008.

82

84

Bradley Henry Foulk, Erie County Dist. Attorney's Office, Douglas Grant McCormick, for the Com. of PA, appellant.

Michael F.J. Piecuch, Office of Atty. Gen., for Office of Attorney General, appellant amicus curiae.

Philip B. Friedman, Ambrose, Friedman & Weichler, for Bruce Alan Chase, appellee.

John B. Mancke, Mancke, Wagner & Spreha, Harrisburg, for Pennsylvania Ass'n of Criminal Defense Lawyers, appellee amicus curiae.

Sarah Sisti McInnes, Bryan Roger Sgrignoli, Drinker, Biddle & Reath, LLP, Philadelphia, for American Civil Liberties Union of PA, appellee amicus curiae.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice EAKIN.

At 3:30 a.m. on August 24, 2004, Officer John Stephens was parked off Route 5, a two-lane highway with a broken-yellow center line and no traffic signals. Officer Stephens watched appellee's car for 20 to 30 seconds before it passed him; he

saw the car cross the center line for a few seconds and estimated it was traveling above the speed limit. Officer Stephens followed the car; he saw it cross the right fog line for a few seconds, cross the center line for a few seconds, veer right onto Old Lake Road, veer into the left side of that road while making a wide right turn onto West Park Road, then turn left onto Edgewood Drive. Officer Stephens pulled the car over, having observed it for eight-tenths of a mile.

Based on this and additional information collected after the stop, appellee was charged with DUI–General impairment, 75 Pa.C.S. § 3802(a)(1). He was also charged with driving on roadways laned for traffic, 75 Pa.C.S. § 3309(1) ("Driving within single lane.—A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety."), and driving on the right side of roadway, 75 Pa.C.S. § 3301(a) ("General rule.— Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway. . . ."). Appellee moved to suppress all evidence obtained after the stop, which he alleged violated both the federal and state constitutions.

The trial court granted appellee's suppression motion, concluding both constitutions require probable cause to stop a vehicle for an alleged traffic violation, rendering unconstitutional the Vehicle Code provision authorizing stops based on reasonable suspicion. The Commonwealth appealed pursuant to 42 Pa.C.S. § 722(7), which vests this Court with exclusive jurisdiction where a trial court has invalidated a statute on constitutional grounds. No ruling was made on the two summary offenses.[1]

The former version of 75 Pa.C.S. § 6308(b) required an officer to have "articulable and reasonable grounds to suspect a violation of [the Vehicle Code]" to effectuate a vehicle stop. 75 Pa.C.S. § 6308, amended by 2003 Pa. Laws 24, § 17 (effective Feb. 1, 2004). This Court interpreted "articulable

---

1. While a permissible stop could have been based on the officer's observation of the violation of these two sections, our review is limited to the unconstitutionality of the statute.

and reasonable grounds" to be the equivalent of "probable cause," requiring police have probable cause to believe the vehicle or its driver was in violation of the Vehicle Code. *Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983, 986 (2001); *Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113, 1116–17 (1995).

*Gleason* thus held the *statutory* standard for stops based on potential Vehicle Code violations was probable cause, even if an investigative stop would be *constitutionally* permitted in a non-vehicle situation based on reasonable articulable suspicion.[2] *Gleason* did so based on interpretation of the former § 6308(b). The legislature thereafter modified § 6308(b), bringing it into line with requirements of constitutional case law for stops not involving the Vehicle Code. The amended statute provides:

> Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). Thus, when an officer has reasonable suspicion a violation of the Vehicle Code is occurring or has occurred, he may interrupt the privileged operation of a vehicle on the public highways and stop the vehicle for the investigative purposes stated therein. *Id.* The changes became effective February 1, 2004, and thus apply here.

 The issue before us is whether the legislature could determine the quantum of cause an officer needs to stop a vehicle for an alleged violation of the Vehicle Code. This being a question of law, our scope of review is plenary and our standard of review is *de novo. Craley v. State Farm Fire and*

**2.** *See Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Casualty Company,* 586 Pa. 484, 895 A.2d 530, 539 n. 14 (2006). A statute will only be found unconstitutional if it "clearly, palpably and plainly" violates the Constitution. *Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384, 388 (2000). There is a strong presumption legislative enactments are constitutional. *Id.*; *see also* 1 Pa.C.S. § 1922(3) (presumption legislature did not intend to violate federal and state constitutions when enacting legislation).

■■■■ The Fourth Amendment to the United States Constitution[3] protects the people from unreasonable searches and seizures. *In the Interest of D.M.,* 566 Pa. 445, 781 A.2d 1161, 1163 (2001). A vehicle stop constitutes a seizure under the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The key question in determining if a seizure is constitutional under the Fourth Amendment is if it is reasonable. *Michigan Department of State Police v. Sitz,* 496 U.S. 444, 450, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).

■■■■ A warrantless seizure is presumptively unreasonable under the Fourth Amendment, subject to a few specifically established, well-delineated exceptions. *Horton v. California,* 496 U.S. 128, 133 n. 4, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). One exception allows police to briefly detain individuals for an investigation, maintain the *status quo,* and if appropriate, conduct a frisk for weapons when there is reasonable suspicion that criminal activity is afoot. *See Terry, supra.* The Fourth Amendment does not prevent police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if it is a minor offense. *United States v. Booker,* 496 F.3d 717, 721–22 (D.C.Cir.2007).

**3.** *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

Nevertheless, appellee argues the Fourth Amendment requires probable cause, relying on *Whren,* which stated, "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren,* at 810, 116 S.Ct. 1769. However, this language only confirms that when police possess the higher quantum of evidence, probable cause, they may conduct a vehicle stop; the Court did not state probable cause is *required* to stop.

Appellee goes on to argue some federal circuits "have held that probable cause is required to conduct a traffic stop." Appellee's Brief, at 25 (citations omitted). However, a review of those cases reveals they too merely confirm that a vehicle stop based on probable cause was lawful—they do not state probable cause was required for every stop, merely because a vehicle was involved. *See United States v. Puckett,* 422 F.3d 340, 342 (6th Cir.2005) ("Puckett contends that the district court erred in not granting his motion to suppress because [the officer] lacked probable cause to stop him and therefore the fruits of the illegal search are inadmissible. Probable cause is determined by the totality of the circumstances . . . ."); *United States v. Granado,* 302 F.3d 421, 423 (5th Cir.2002) ("The decision to stop an automobile is constitutional 'where the police have probable cause to believe that a traffic violation has occurred.'") (quoting *Whren,* at 810, 116 S.Ct. 1769); *United States v. Harrell,* 268 F.3d 141, 148 (2d Cir.2001) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") (quoting *Whren,* at 810, 116 S.Ct. 1769); *United States v. Freeman,* 209 F.3d 464, 466 (6th Cir.2000) ("It is true that 'so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful.'") (quoting *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993)).[4]

**4.** The United States Supreme Court recently stated, "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or *vehicles* that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)

The Third Circuit recently found the Second, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits all "construed *Whren* to require only that the police have 'reasonable suspicion' to believe that a traffic law has been broken." *Delfin–Colina*, at 396 (quoting *United States v. Willis*, 431 F.3d 709, 723 (9th Cir.2005) (Fletcher, J., dissenting)); *see also Holeman v. City of New London*, 425 F.3d 184, 189–90 (2d Cir.2005); *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir.2003); *United States v. Lopez–Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999); *United States v. Navarrete–Barron*, 192 F.3d 786, 790 (8th Cir.1999); *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir.1999).

The First, Fourth, Fifth, Seventh, and District of Columbia Circuits also have indicated reasonable suspicion is sufficient to justify a vehicle stop. *See Booker*, at 721–22 (reasonable suspicion existed to investigate placement of temporary tag on vehicle); *United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir.2005) (noting officer must have reasonable suspicion that some illegal activity, such as traffic violation, occurred, or is about to occur); *United States v. Chhien*, 266 F.3d 1, 5–6 (1st Cir.2001) (stating vehicle stop "must be supported by a reasonable and articulable suspicion of criminal activity"); *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir.1993) (noting "if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment"); *United States v. Tipton*, 3 F.3d 1119, 1122 (7th Cir.1993) (following *Terry* and stating Fourth Amendment is no bar to police stopping and questioning motorists when they witness or suspect violation of traffic laws, even if offense is minor).

These federal cases acknowledge the constitutionality of a vehicular *Terry* stop to investigate suspected criminal activity.

(emphasis added) (citations omitted). A "brief investigatory stop" of a person or a vehicle would be a *Terry* stop, requiring only reasonable suspicion. *Arvizu* therefore supports the conclusion that reasonable suspicion is sufficient to make a vehicle stop to investigate suspected criminal activity. *See United States v. Delfin–Colina*, 464 F.3d 392, 397 (3d Cir.2006).

*See Delfin–Colina,* at 394–95 (investigating whether necklace was illegally hanging from rear view mirror); *Holeman,* at 189–90 (investigating suspected prowler); *Lopez–Soto,* at 1103 (investigating if car was properly registered); *Hill,* at 264–65 (investigating whether driver was carrying drugs); *Navarrete–Barron,* at 790–91 (investigating whether driver was carrying drugs); *Ozbirn,* at 1196–97 (investigating if driver was asleep or impaired); *but see Chanthasouxat,* at 1272–73, 1281 (officer stopped vehicle for not having rear view mirror; investigation ensued after stop, which was found unconstitutional because officer incorrectly interpreted rear view window law's requirements).

The Third Circuit summarized this area of law:

> *Terry* and *Whren* stand for the proposition that a traffic stop will be deemed a reasonable "seizure" when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop. In other words, an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place.

*Delfin–Colina,* at 398.

▮▮▮▮ Appellee's argument conflates two portions of the *Terry* exception; *Terry* requires reasonable suspicion, and its purpose is to allow immediate investigation through temporarily maintaining the *status quo.* If reasonable suspicion exists, but a stop cannot further the purpose behind allowing the stop, the "investigative" goal as it were, it cannot be a valid stop. Put another way, if the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop—if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.

In *Whitmyer,* we reviewed a vehicle stop and stated:

We note that this is not a case where further investigation would lead to a discovery of a violation of the Vehicle Code. If the trooper was unable to clock Appellee for three-tenths of a mile or observe the conditions that would warrant a citation for driving at an unsafe speed, there is no further evidence that could be obtained from a subsequent stop and investigation.

*Whitmyer*, at 1118. The Superior Court recently followed similar logic:

[I]t is hard to imagine that an officer following a vehicle whose driver is suspected of driving at an unsafe speed would discover anything further from a stop and investigation. Similarly, if an officer who observes a driver run a red light or drive the wrong way on a one-way street, the officer either does or does not have probable cause to believe there has been a violation of the Vehicle Code. A subsequent stop of the vehicle is not likely to yield any more evidence to aid in the officer's determination.

*Commonwealth v. Sands*, 887 A.2d 261, 270 (Pa.Super.2005). This logic is correct. If *Terry* allows an investigatory stop based on reasonable suspicion, there must be something to investigate.

■ *Sands* distinguished a vehicle stop for suspected DUI, noting that such a stop was "a scenario where further investigation almost invariably leads to the most incriminating type of evidence, *i.e.*, strong odor of alcohol, slurred speech, and blood shot eyes. This type of evidence can only be obtained by a stop and investigation." *Id.* This is correct—when the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional.

■ The statute cannot reduce the protections a citizen has under our Constitution—if it did so, it would indeed be unconstitutional. A statutory standard minimally equivalent to the constitutional standards applied in other situations is appropriate; it is not inconsistent with our jurisprudence.[5]

5. Of course, if there is a legitimate stop for a traffic violation (based on probable cause), additional suspicion may arise before the initial stop's

 The amendment of § 6308(b) accomplished the elimination of a unique and higher statutory threshold for stops for Vehicle Code offenses; the amendment indicated the legislature did not wish to create a higher standard than that required under the Constitution. That said, one must remember the reason why the Constitution tolerates the lesser standard articulated in *Terry*—the detention is allowed to maintain the *status quo* so the officer may conduct a brief and safe investigation to see if indeed there is criminal activity afoot. Extensive case law supports the conclusion a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible. However, a vehicle stop based solely on offenses not "investigatable" cannot be justified by a mere reasonable suspicion, because the purposes of a *Terry* stop do not exist—maintaining the *status quo* while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.

Indeed, the language of § 6308 reflects this very intent. Stops based on reasonable suspicion are allowed for a stated investigatory purpose: "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title." 75 Pa.C.S. § 6308(b). This is conceptually equivalent to the purpose of a *Terry* stop. It does not allow all stops to be based on the lower quantum—it merely allows this for investigatory stops, consistent with the requirements of both federal and state constitutions. We interpret the legislature's modification of § 6308 as merely eliminating the statutory requirement of a greater level of information for a stop under the Vehicle Code than is constitu-

purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions. *See Lopez–Moreno,* at 431 (citations omitted) (initial stop for traffic violations; investigatory stop lawfully continued as there was evidence driver was transporting illegal aliens); *see also Chhien,* at 7–8 (initial stop for traffic violations; after consensual pat-down revealed large amount of cash, investigatory stop lawfully continued); *Hassan El,* at 728, 731 (initial stop for running stop sign; after witnessing passenger act nervous with bulge in pants, officer lawfully felt bulge and found gun).

tionally required for all other stops. As such, it is not unconstitutional.

The trial court's order is reversed to the extent it found 75 Pa.C.S. § 6308(b) unconstitutional under the federal constitution.

■■■■■■ This does not end our analysis, as Article I, § 8 of the Pennsylvania Constitution also protects against unreasonable searches and seizures.[6] To determine if Article I, § 8 provides greater protection than the Fourth Amendment, we look to: (1) Article I, § 8's text; (2) its history and case law interpreting it; (3) related case law from other states; and (4) policy considerations. *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 895 (1991). While the *Edmunds* analysis appears to be required, various decisions from this Court after *Edmunds* found broader constitutional protections without conducting an *Edmunds* analysis. *See Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896 (1995); *Commonwealth v. Mason,* 535 Pa. 560, 637 A.2d 251 (1993); *Commonwealth v. Hess,* 532 Pa. 607, 617 A.2d 307 (1992); *see also Commonwealth v. Perry,* 568 Pa. 499, 798 A.2d 697, 714 (2002) (Castille, J., concurring); *Commonwealth v. Shaw,* 564 Pa. 617, 770 A.2d 295, 304 (2001) (Castille, J., dissenting, joined by Saylor, J.). Further, it is unclear exactly how the *Edmunds* factors are evaluated. For example, it is uncertain if each factor is weighed evenly and what level of proof a party needs to show to prevail on a particular factor or the total analysis. Nevertheless, we conduct an *Edmunds* analysis here.

The Commonwealth argues Article I, § 8 does not require an officer possess more than reasonable suspicion to make a vehicle stop. Appellee argues Article I, § 8 requires probable cause to make a vehicle stop.

**6.** *See* Pa. Const. art. I, § 8 ("The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.").

■■■■■ The similarities in the text of the Fourth Amendment and Article I, § 8 do not demand identical interpretation. *Commonwealth v. Waltson*, 555 Pa. 223, 724 A.2d 289, 291 (1998). Article I, § 8 can provide no less protection than what the Fourth Amendment requires, but it may establish greater protections. *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769, 772 (1996). We recently clarified the term "possessions" in Article I, § 8 does not refer to everything one owns as "there would have been no need to specify the other three objects [preceding it.]" *Commonwealth v. Russo*, 594 Pa. 119, 934 A.2d 1199, 1206 (2007). Just as in *Russo*, given the textual similarity between the Fourth Amendment and Article I, § 8, it is not surprising that neither party makes much of a text-based argument here. *Id.* We conclude Article I, § 8's text alone does not show probable cause is constitutionally required to make a vehicle stop. This factor weighs for the Commonwealth.

■■■■■ Turning to history and case law, both parties refer to the general proposition that "unlike the Fourth Amendment, Article I, [§ ] 8 was motivated by a desire to safeguard citizens' privacy." *Id.* There are three relevant cognizable categories of interactions between persons and police: a mere encounter, an investigative detention, and a custodial detention or arrest. *Commonwealth v. Polo*, 563 Pa. 218, 759 A.2d 372, 375 (2000). A mere encounter need not be supported by any level of suspicion, and does not require a person to stop or respond. *Id.* An "investigative detention," or *Terry* stop, must be supported by reasonable suspicion; it subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. *Id.* An arrest or custodial detention must be supported by probable cause. *Id.* "Pennsylvania courts have consistently followed *Terry* in stop and frisk cases, including those in which the appellants allege protections pursuant to Article I, [§ ] 8. . . ." *In the Interest of D.M.*, at 1163 (citing *Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 677 (1999); *Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571, 573 (1997)); *see also Commonwealth v. Wimbush*, 561 Pa.

368, 750 A.2d 807, 810 n. 2 (2000) ("Pennsylvania has consistently followed Fourth Amendment jurisprudence in stop and frisk cases.") (citing *Jackson*, at 574; *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226, 230 (1996) (*Terry* stop constitutional under Article I, § 8)). Relying on that language from *In the Interest of D.M.*, we noted an investigative detention under the Fourth Amendment and Article I, § 8 "is coterminous." *Commonwealth v. Revere*, 585 Pa. 262, 888 A.2d 694, 699 n. 6 (2005). Thus, vehicle stops that are constitutional under *Terry* are constitutional under Article I, § 8.

Appellee relies on our decisions in *Whitmyer, Gleason, Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875, 878 (1973), *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414, 416–17 (1975), and *McKinley v. Commonwealth, Department of Transportation, Bureau of Driver Licensing*, 576 Pa. 85, 838 A.2d 700, 705 (2003). *Swanger* held a random vehicle stop, based upon 75 Pa.C.S. § 1221(b), was unreasonable under the Fourth Amendment because there was no outward sign the vehicle violated the Vehicle Code. *Swanger*, at 878. Section 1221 essentially gave police power to stop any vehicle without any suspicion of criminal activity. *Swanger* held:

[B]efore a police officer may stop a single vehicle to determine whether or not the vehicle is being operated in compliance with the Motor Vehicle Code, he must have probable cause based on specific facts which indicate to him either the vehicle or the driver are in violation of the code.

*Id.*, at 879. Importantly, *Swanger* did not mention Article I, § 8, as it was a Fourth Amendment case.

*Murray* interpreted § 1221 to mean probable cause was required to conduct a vehicle stop for an alleged violation of the Vehicle Code. *Murray*, at 416–17. However, *Murray* also stated, "[A]n investigative stop of a moving vehicle to be valid must be based upon objective facts creating a reasonable suspicion that the detained motorist is presently involved in criminal activity." *Id.*, at 418. Again, like *Swanger, Murray* did not mention Article I, § 8, as it was a Fourth Amendment case.

The legislature repealed § 1221 and enacted § 6308(b), which required an officer to have "articulable and reasonable grounds to suspect a violation of [the Vehicle Code]" to effectuate a lawful vehicle stop. 75 Pa.C.S. § 6308(b). This Court interpreted the "articulable and reasonable grounds" standard to require police to have probable cause to believe the vehicle or its driver was violating the Vehicle Code. *Gleason*, at 989; *Whitmyer*, at 1116–17. Neither *Whitmyer* nor *Gleason* mentioned Article I, § 8. Instead, they only interpreted the "articulable and reasonable grounds" standard in § 6308(b) to mean probable cause.

Thus, *Whitmyer*, *Gleason*, *Murray*, and *Swanger* did not address, let alone hold, Article I, § 8 required police possess probable cause to make a vehicle stop.

■■■ *McKinley* stated:

[T]he decision in *Whitmyer* to retain an elevated standard to support automobile stops for Vehicle Code violations derived from interpretation of an undefined term and reconciliation of the statute with prior rulings of the Court that the probable cause standard for these kinds of stops was constitutionally and/or judicially mandated, *see Whitmyer*, ... at 1115–16 (citing *Murray* [and] *Swanger* ), and not from the plain meaning of a statutorily defined term.

*McKinley*, at 705 n. 2. While this footnote may seem persuasive for appellee, *McKinley* dealt with "the validity of an administrative driver's license suspension under the Implied Consent Law, which was predicated on an extraterritorial encounter between Appellant and a Harrisburg International Airport Police corporal." *Id.*, at 701. Therefore, *McKinley* also did not address, let alone hold, Article I, § 8 required police possess probable cause to make a vehicle stop. To the extent *McKinley* or any other cases could be construed to hold probable cause is required to make all vehicle stops under the Fourth Amendment or Article I, § 8, this would conflict with our repeated statements that Article I, § 8 is the same as the Fourth Amendment for *Terry* purposes. *See Revere*, at 699 n.

6; *In re D.M.*, at 1163; *Wimbush,* at 810 n. 2; *Cook,* at 677; *Jackson,* at 573; *see also Melendez,* at 228.

 Ultimately, this history and case law reveals two main points. First, since the Fourth Amendment and Article I, § 8 are coterminous for *Terry* purposes, and the Fourth Amendment allows for an investigative detention in the form of a vehicle stop, Article I, § 8 allows for a vehicle stop based on reasonable suspicion. Second, we have not held Article I, § 8 requires a vehicle stop to be supported by probable cause. Accordingly, this factor weighs for the Commonwealth.

A review of other states' case law reveals many states have upheld vehicle stops based on reasonable suspicion. *See generally* Commonwealth's Brief, Appendix 1–2, at 38–41 (collecting numerous cases). Appellee cites seven cases from other states for the proposition that probable cause is required to conduct a vehicle stop. *See* Appellee's Brief, at 13. However, none of those cases have held a state constitution requires police have probable cause to make a vehicle stop. *See Commonwealth v. Fox,* 48 S.W.3d 24, 27 (Ky.2001) (relying on *Whren's* holding "that the temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures . . . ."); *Rowe v. Maryland,* 363 Md. 424, 769 A.2d 879, 884 (2001) ("Where the police have probable cause to believe that a traffic violation has occurred, a traffic stop and the resultant temporary detention may be reasonable. A traffic stop may also be constitutionally permissible where the officer has a reasonable belief that 'criminal activity is afoot.' ") (citations omitted); *Sitz v. Department of State Police,* 443 Mich. 744, 506 N.W.2d 209, 210 (1993) (although sobriety checkpoints do not violate Fourth Amendment, sobriety checkpoints violate Mich. Const. art. 1, § 11); *State v. Dickey,* 152 N.J. 468, 706 A.2d 180, 184 (1998);[7]

7. *Dickey* stated:

As a general rule, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." The *Terry* Court created a two-part test designed to measure the reasonableness of an investigative stop against the

*People v. Johnson,* 1 N.Y.3d 252, 771 N.Y.S.2d 64, 803 N.E.2d 385, 388 (2003) (discussing inventory searches of vehicle and adopting *Wren's* holding " 'that where a police officer has probable cause to detain a person temporarily for a traffic violation, that seizure does not violate the Fourth Amendment to the United States Constitution even though the underlying reason for the stop might have been to investigate some other matter....' "); *Christian v. State,* 592 S.W.2d 625 (Tex.Crim. App.1980) (case does not decide quantum of evidence needed to make vehicle stop). Based on these cases, this factor weighs for the Commonwealth.

The Commonwealth argues a reasonable suspicion standard adequately addresses law enforcement's need to enforce the Vehicle Code and the citizenry's privacy interests. Appellee, along with other interested parties who filed *amicus* briefs, argues reasonable suspicion would not adequately protect Pennsylvanians' privacy and essentially would provide police with unfettered discretion, which could lead to police making vehicle stops based on a pretextual motive.

As noted above, Pennsylvanians have a right to be free from unreasonable searches and seizures, and this Court found Article I, § 8 contains a privacy protection. While this notion of privacy is applicable to a vehicle, we have long concluded it to be diminished in a vehicle. *See Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185, 1191 (2004) ("While many in our society have a great fondness for their vehicles, it is too great a leap of logic to conclude that the automobile is entitled to the same sanctity as a person's body."); *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101, 106 (1978) (expectation of privacy in one's vehicle significantly less than in one's home or office); *Commonwealth v. Mangini,* 478 Pa. 147, 386 A.2d 482, 487 (1978) (same); *see also Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621, 630 (2007) (plurality).

Pennsylvanians also have a significant interest in having the Vehicle Code enforced. In the context of DUI roadblocks, we

intrusion on the detainee's right to be secure from unreasonable searches.
*Id.* (citations omitted).

determined the Commonwealth has a compelling interest in detecting and removing intoxicated drivers because they may cause death, injury, and property damage. *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035, 1042 (1987). We explained:

> [T]he mass carnage that results from unlicensed drivers and unsafe vehicles occupying the road, outweighs the privacy interests of the individual.... [T]he state has a vital interest in maintaining highway safety by ensuring that only qualified drivers are permitted to operate motor vehicles, and that their vehicles operate safely, thus assuring that dangerous drivers as well as dangerous automobiles are kept off the road.

*Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177, 1179 (1992). In 2006, there were 128,342 reported vehicle crashes in Pennsylvania. *See* 2006 Pennsylvania Crash Facts and Statistics, published by the Pennsylvania Department of Transportation, at 8, electronic version available at: http://www.dot.state.pa.us/Internet/Bureaus/pdBHSTE.nsf/InfoFb 06?OpenForm. The reported crashes in 2006 resulted in 96,597 injuries, and 1,525 deaths. *Id.* Obviously, some of the people involved in the crashes were not responsible for the accident, but were nonetheless seriously injured. For example, the reported crashes in 2006 resulted in 4,569 pedestrian injuries and 170 pedestrian deaths. *Id.* Vehicle crashes also cost Pennsylvanians a fantastic amount of money each year. The economic loss due to reported vehicle crashes in Pennsylvania in 2006 was a staggering $11,135,889,322, *id.,* which is about $895 per person. *Id.*

Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer. *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). "In a *Terry* stop, 'the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.'" *Commonwealth v. Mistler,* 590 Pa. 390, 912 A.2d 1265, 1277

(2006) (Eakin, J., dissenting) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). "A finding of reasonable suspicion does not demand 'a meticulously accurate appraisal' of the facts." *Booker*, at 721 (quoting *United States v. Coplin*, 463 F.3d 96, 101 (1st Cir.2006)). Indeed, even stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable. *Id.*, at 721–22 (citing *Coplin*, at 101) (although defendant's drivers' license valid, traffic stop objectively reasonable because police cruiser computer indicated license suspended); *United States v. Miguel*, 368 F.3d 1150, 1153–54 (9th Cir.2004) (although vehicle properly registered, traffic stop objectively reasonable because police cruiser computer indicated registration expired).

While it is argued the lesser standard will allow a vehicle stop to be made based on pretextual motives, the United States Supreme Court made clear that case law "foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren*, at 813, 116 S.Ct. 1769. In other words, if police can articulate a reasonable suspicion of a Vehicle Code violation, a constitutional inquiry into the officer's motive for stopping the vehicle is unnecessary.

Ultimately, the legislature constitutionally determined the reasonable suspicion standard adequately balances citizens' privacy in a vehicle and law enforcement's ability to briefly investigate an alleged violation of the Vehicle Code. It is not our role to disturb this democratic function when the current version of § 6308(b) does not clearly, plainly, and palpably violate our Constitution. We therefore hold the current version of § 6308(b) is constitutional under the Fourth Amendment and Article I, § 8.

The order of the trial court finding § 6308(b) unconstitutional is reversed. Since the trial court only determined there was not probable cause for Officer Stephens to stop appellee,

we remand to the trial court to determine if Officer Stephens had reasonable suspicion to stop appellee's vehicle.

Jurisdiction relinquished.

Former Chief Justice CAPPY, and former Justices NEWMAN and BALDWIN did not participate in the decision of this case.

Chief Justice CASTILLE and Justice BAER join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

While I agree with the majority that the rationale justifying allowance of a *Terry* stop founded upon reasonable suspicion (as opposed to probable cause) implicitly assumes that further investigation is possible, I do not see any need in the present matter to make such investigative potential a specific element of the constitutional test, particularly as this case does not implicate the issue. *See* Majority Opinion at 92–95, 960 A.2d at 114–16 (affirming that additional evidence can be obtained in an investigative stop for suspicion of DUI). *See generally United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (developing that a *Terry* stop of a vehicle is justified so long as the officer harbored an objectively reasonable suspicion that the driver violated the law, in light of the totality of the circumstances surrounding the stop). The majority proceeds under the supposition that certain vehicle violations cannot be investigated further by stopping the vehicle; however, notwithstanding the majority's recitation of various circumstances as set forth in *Commonwealth v. Sands,* 887 A.2d 261, 270 (Pa.Super.2005) (referencing driving at an unsafe speed, running a red light, and driving the wrong way on a one-way street), there are many instances in the case law where the driver makes an inculpatory statement to the officer following the stop. Such statements—assuming they

104

are voluntary—may be relevant to the investigative purposes of the stop. Accordingly, I join the result reached by the majority but dissociate myself from its discussion of limitations on an officer's "legitimate expectation of investigatory results." Majority Opinion at 92, 960 A.2d at 115.