J. S44007/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :     IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
v.        :
:
FRANKLIN D. SMITH, JR.,       :        No. 2975 EDA 2015
:
Appellant    :


Appeal from the Judgment of Sentence, September 4, 2015,
in the Court of Common Pleas of Delaware County
Criminal Division at No. CP-23-CR-0002706-2015


BEFORE:  FORD ELLIOTT, P.J.E., STABILE AND MUSMANNO, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED JULY 11, 2016**

Franklin D. Smith, Jr., appeals from the judgment of sentence entered on September 4, 2015, by the Court of Common Pleas of Delaware County following his conviction in a waiver trial of driving under the influence of alcohol or controlled substance ("DUI"), operation of vehicles without official certificate of inspection, and restrictions on alcoholic beverages.[1]  We affirm.

The trial court set forth the following factual and procedural history:

> Officer Matthew Liss is employed with the Nether Providence Township Police Department and has been so employed as a patrolman for the past sixteen years.  Over the course of his career as a patrolman, Officer Liss has had the opportunity to conduct hundreds of arrests for [DUI].

---

[1] 75 Pa.C.S.A. § 3802(a)(1), 75 Pa.C.S.A. § 4703(a), and 75 Pa.C.S.A. § 3809(a), respectively.

On February 8, 2015, in his capacity as a patrolman, Officer Liss was working the 7:00 a.m. [] to 7:00 pm.[] shift. Officer Liss was in uniform and operating a marked patrol vehicle. Around 3:00 p.m., as Officer Liss was traveling eastbound on Brookhaven Road approaching the intersection of Rose Valley Road, he observed a blue colored pickup truck traveling in the westbound direction on Brookhaven Road. Officer Liss's attention was drawn to the vehicle because, based on his training and experience, it appeared that the emission and inspection stickers were fraudulent. Through his training, Officer Liss knew that [the Pennsylvania Department of Transportation (PennDOT)] uses many anti-counterfeit measures when producing the stickers; two of the biggest identifiers being the color of the sticker and the texture of the paper. From his vehicle, Officer Liss could clearly see the stickers in the bottom left-hand portion of the truck[']s window[.] The color was his first indicator that they were not valid. Typically, the sticker should be orange in color; however, the truck's stickers were grayish in color.

Officer Liss turned his patrol vehicle around, activated his emergency lights and siren, and conducted a vehicle stop at the area of Moore Road and Brookhaven Road. Officer Liss exited his patrol vehicle and made contact with the driver of the truck. The driver produced his license, registration, and insurance, which identified him as [appellant]. There was also another male in the front passenger seat.

As Officer Liss was speaking with [appellant], he could detect an odor of alcohol emanating from his breath and person. Officer Liss also observed that [appellant's] speech was slightly slurred and his eyes were red and blurry. From his vantage point outside the window of the vehicle, Officer Liss could see that in the center of the vehicle, on the transmission hump, there was an open 40[-ounce] bottle of beer in a brown paper bag. Officer Liss asked [appellant] if he had been drinking to which

- 2 -

[appellant] responded that he had a shot and a beer earlier in the day.

Officer Michael Markunas, of the Nether Providence Township Police Department, arrived as backup and the officers decided to ask [appellant] to exit his vehicle in order to conduct sobriety tests. With his twenty-four years as a patrolman, Officer Markunas has been involved in approximately 500 arrests for DUI and has prior training in conducting field sobriety tests.

Officer Markunas had [appellant] go over to the shoulder area of the road because it was a flat walking surface and had a straight line. Immediately upon speaking with [appellant], Officer Markunas detected an odor of alcohol emanating from [appellant's] person and that [appellant's] eyes were glassy and bloodshot.

Officer Markunas started with the horizontal gaze nystagmus test. Officer Markunas instructed [appellant] to stand with his feet together, hands at his side, to not move his head, and to stay still while following Officer Markunas's pen with his eyes. As soon as Officer Markunas began to move the pen, [appellant] started turning his head; indicating to Officer Markunas that [appellant] was unable to follow simple instructions and that [appellant's] eyes showed nystagmus.

Next, Officer Markunas performed the lack of convergence test. Typically, if the test is completed without failure, a person's eyes should cross; [appellant's] eyes stayed locked in the same position.

Lastly, Officer Markunas asked [appellant] to perform the walk and turn test. Officer Markunas instructed [appellant] to keep his feet together, hands at his side, and count out loud nine heel-to-toe steps. Officer Markunas demonstrated the test for [appellant]. [Appellant] did not step heel-to-toe;

failed to keep his hands at his side; and did not turn even remotely close to the proper way.

Based on [appellant's] performance on all three tests, Officer Markunas determined that [appellant] was under the influence, most likely of alcohol, and was incapable of safely [driving] a motor vehicle on the roads of the Commonwealth.

Officer Markunas informed Officer Liss that [appellant] failed all of the tests. Officer Liss placed [appellant] under arrest for [DUI] and put [appellant] in the back of his patrol vehicle, where he read [appellant] the Pennsylvania implied consent law and explained to him what the form meant. After reading and explaining the form twice, [appellant] refused to submit to any chemical testing, stating that he was not "alley drunk."[2]

. . .

On August 8, 2015, counsel for [a]ppellant filed a motion to suppress alleging that the traffic stop of [a]ppellant's vehicle was unlawful. On September 4, 2015, this Court held a suppression hearing. Counsel for the Commonwealth and counsel for [appellant] both agreed that testimony would be presented on the suppression issues and, depending on the outcome, a non-jury trial would be conducted immediately thereafter.

The Commonwealth presented testimony from Officer Liss and Officer Markunas who testified to the facts outlined above. Officer Markunas was offered and accepted as an expert in the field of sobriety testing and [DUI] investigations. The Commonwealth admitted two exhibits: C1 - Photo of [appellant's] emission and inspection stickers and C2 [-] The Pennsylvania Implied Consent Form.

---

[2] Officer Liss testified that after he read a refusal to submit to chemical testing form to appellant and asked appellant to sign the form, appellant refused and stated, "I'm not alley drunk." Officer Liss further testified that he did not know what appellant meant by that statement. (Notes of testimony, 9/4/15 at 40-41.)

- 4 -

After hearing the testimony, this Court determined that the information provided by the officers was credible and that Officer Liss had reasonable suspicion to conduct a traffic stop based on a motor vehicle code violation. As such, this Court denied the motion to suppress.

In regards to the non-jury trial, the Commonwealth rested on the testimony provided at the suppression hearing and the admitted exhibits. Appellant presented Lavinia Beulah as a character witness. Ms. B[eul]ah testified that she has known [a]ppellant for forty years or more and that his reputation in the community is nice, friendly, helpful, honest, and of good moral character. Appellant also elected to testify.

Appellant stated that on February 8, 2015, he had two drinks, a shot and a beer, around noon. Around 3:00 p.m., [a]ppellant was driving his pickup truck with his friend in the front passenger seat and that his passenger had an open 40[-ounce] beer. Appellant stated [that] he felt confused by the sobriety tests and that he was never shown the implied consent form.

The Court found [a]ppellant guilty of Count 1: DUI 1st offense; Count 2: Evidence of Emission Inspection; and Count 3: Restrictions on Alcoholic Beverages. Appellant was sentenced on Count 1 [to] 72 hours to 6 months in Delaware County Prison. There was no further penalty for Count 2 or Count 3.

On October 2, 2015, [a]ppellant filed a notice of appeal. On October 26, 2015, [a]ppellant filed a 1925(b) statement of matters complained of on appeal.

Trial court opinion, 11/13/15 at 1-6 (footnotes and citations to notes of testimony omitted).

Appellant raises the following issues for our review:

> [1.] Did the trial court err when it denied [appellant's] motion to suppression [sic] evidence obtained as a result of an unlawful traffic stop leading to his arrest?
>
> [2.] Was the evidence insufficient to sustain a conviction of [DUI] because the Commonwealth failed to prove that [appellant] committed that offense beyond a reasonable doubt?

Appellant's brief at 5.

Our standard of review for challenges to the denial of a suppression motion is as follows:

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. McAdoo***, 46 A.3d 781, 783-784 (Pa.Super. 2012),

***appeal denied***, 65 A.3d 413 (Pa. 2013) (citations omitted).

Whenever a police officer has reasonable suspicion that a violation of the Vehicle Code, 75 Pa.C.S.A. § 101, *et seq.*, is occurring or has occurred, he may stop a vehicle for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, "or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of [the Vehicle Code]." *Id.* at § 6308(b). Section 6308(b) requires only reasonable suspicion to support a vehicle stop for gathering information necessary to enforce a Vehicle Code violation. A police officer must, however, have probable cause to support a vehicle stop where the officer's investigation following the stop serves no "investigatory purpose relevant to the suspected [Vehicle Code] violation." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super. 2010) (*en banc*), *appeal denied*, 25 A.3d 327 (Pa. 2011). As explained by our supreme court:

> Indeed, the language of § 6308 reflects this very intent. Stops based on reasonable suspicion are allowed for a stated investigatory purpose: "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title." 75 Pa.C.S.[A.] § 6308(b). This is conceptually equivalent to the purpose of a *Terry*[3] stop. It does not allow all stops to be based on the lower quantum--it merely allows this for investigatory stops, consistent with the requirements of both federal and state constitutions. We interpret the legislature's modification of § 6308 as merely eliminating the statutory requirement of a greater level of information for a stop under the

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

> Vehicle Code than is constitutionally required for all other stops.

*Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. 2008). "[I]f the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop--if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion." *Id.* at 115. Therefore, "when the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional." *Id.*

Here, Officer Matthew Liss stopped appellant's vehicle because he observed that it appeared to have fraudulent inspection and emissions stickers. (Notes of testimony, 9/4/15 at 11.) Officer Liss testified that during the 16 years that he has been a police officer, he has come across numerous fraudulent inspection and emissions stickers. (*Id.* at 9, 11-12.) He stated that PennDOT uses many anti-counterfeit measures when it produces inspection and emissions stickers, including the color of the sticker. (*Id.* at 12.)

As appellant's truck and Officer Liss' patrol vehicle passed each other while traveling in opposite directions, Officer Liss testified that he noticed that the stickers on appellant's truck were gray, as opposed to the PennDOT-issued orange. (*Id.* at 13-16.) This observation gave rise to a

suspected violation of the Vehicle Code provision requiring that vehicles have current, valid inspection stickers. **See** 75 Pa.C.S.A. § 4703(a). Under the totality of the circumstances, then, Officer Liss' initial observation that the inspection and emissions stickers on appellant's truck appeared to be fraudulent gave Officer Liss reasonable suspicion to believe that appellant was in violation of 75 Pa.C.S.A. § 4703(a). Therefore, the subsequent traffic stop to investigate the inspection and emissions stickers affixed to appellant's vehicle was supported by reasonable suspicion.

Appellant next complains that the Commonwealth failed to produce sufficient evidence to sustain his DUI conviction.

> Our standard of review for a challenge to the sufficiency of the evidence is well settled. We must view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom. Additionally, it is not the role of an appellate court to weigh the evidence or to substitute our judgment for that of the fact-finder.

**Commonwealth v. Alford**, 880 A.2d 666, 669-670 (Pa.Super. 2005), **appeal denied**, 890 A.2d 1055 (Pa. 2005), quoting **Commonwealth v. Gruff**, 822 A.2d 773, 775 (Pa.Super. 2003), **appeal denied**, 863 A.2d 1143 (Pa. 2004) (citations omitted).

The Vehicle Code defines DUI as:

> **§ 3802. Driving under influence of alcohol or controlled substance.**
>
> **(a) General impairment.**

> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

In order to sustain a conviction under Section 3802(a)(1), the Commonwealth must prove: (1) that defendant was operating a motor vehicle, (2) after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving. ***Commonwealth v. Kerry***, 906 A.2d 1237, 1241 (Pa.Super. 2006). To establish that one is incapable of safe driving, the Commonwealth must prove that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely. ***Id.*** "Substantial impairment" means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. ***Id.*** (citation omitted). Section 3802(a)(1) "is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving." ***Id.*** (citation omitted).

Here, Officer Liss testified that after he pulled appellant over, he smelled alcohol on appellant's breath; he noticed that appellant's eyes were red, watery, and bloodshot; and that when he spoke with appellant, he detected a slight slur. (Notes of testimony, 9/4/15 at 17-18.) Officer Liss also observed a partially consumed 40-ounce bottle of beer resting on the truck's console. (*Id.* at 18, 36.) When Officer Liss asked appellant if he had been drinking alcohol, appellant stated that he had consumed "a shot and a beer" earlier in the day. (*Id.* at 18.) At that point, Officer Michael Markunas arrived on the scene as backup and performed field sobriety tests. (*Id.* at 19.)

Officer Markunas testified that when he began speaking with appellant, he smelled alcohol emanating from appellant's person and observed that appellant's eyes appeared glassy and bloodshot. (*Id.* at 51.) With respect to field-sobriety testing, Officer Markunas first conducted horizontal gaze nystagmus ("HGN") testing, which is a vision test used to determine the ability of the subject's eyes to properly track and maintain focus on objects. (*Id.* at 51-52.) Officer Markunas testified that appellant's performance on that test indicated that appellant was under the influence of "something." (*Id.* at 53.) Officer Markunas then performed a lack of convergence test which expands upon HGN testing. (*Id.* at 53-55.) Appellant's performance on that test also indicated that appellant was under the influence of "something." (*Id.* at 55.) Officer Markunas then performed a walk-and-turn

- 11 -

test.  (*Id.*)  At the conclusion of that test, Officer Markunas testified that he was "relatively sure" that appellant was under the influence of alcohol, a controlled substance, or both.  (*Id*. at 55-56.)  At that point, due to appellant's lack of cooperation, Officer Markunas terminated testing.  (*Id.* at 56.)  Officer Liss then placed appellant under arrest.  (*Id.* at 20-21.)  Appellant refused chemical testing.  (*Id.* at 21.)

Based on the record before us, and viewing the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner, the Commonwealth produced sufficient evidence to show that appellant was operating a motor vehicle after consuming a sufficient amount of alcohol to render him incapable of safe driving and, therefore, sustain his DUI conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2016