J-S11013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD DIETER | : | |
| | : | |
| Appellant | : | No. 1762 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 16, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0003601-2021

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY OLSON, J.:                **FILED AUGUST 1, 2023**

Appellant, Edward Dieter, appeals from the judgment of sentence entered on June 16, 2022, following his bench trial conviction for driving while operating privileges were suspended/revoked – driving under the influence (DUI) related, third or subsequent offense, 75 Pa.C.S.A. § 1543(b)(iii).  We affirm.

We briefly set forth the facts and procedural history of this case as follows.  On April 22, 2021, while on patrol, Officer Samuel Ladd of the Bensalem Police Department observed a green Toyota truck with a tinted cover over the license plate parked in the parking lot of a Holiday Inn Express.  N.T., 6/16/2022, at 5-6.  Officer Ladd exited his patrol car and walked closer to the truck because he could not read the license plate number due to the tinted covering.  *Id.* at 19.  Officer Ladd could only read the license plate at a distance of "[l]ess than 10 feet."  *Id.* at 24.  Officer Ladd then "waited for [the

truck] to move[,]" followed the vehicle out of the parking lot and through two traffic lights before initiating a traffic stop. *Id.* at 6. Following one car-length behind the truck, Officer Ladd could not see the license plate because of the tinted cover. *Id.* at 7. Once stopped, Appellant was not able to produce a valid driver's license to Officer Ladd. *Id.* at 11. When Officer Ladd entered Appellant's name and date of birth into the police database, he learned that Appellant's license was suspended for DUI-related offenses. *Id.* The incident was recorded on police dashboard and body cameras and played for the trial court during the suppression hearing. *Id.* at 12-16.

On May 19, 2021, the Commonwealth charged Appellant with the aforementioned crime. On June 13, 2022, Appellant filed an omnibus pretrial motion seeking to suppress the evidence obtained from the traffic stop, arguing the police lacked reasonable suspicion or probable cause to initiate a traffic stop. On June 16, 2022, the trial court held a suppression hearing wherein Officer Ladd and Appellant testified. The trial court denied suppression. *Id.* at 27. Appellant waived his right to a jury and proceeded directly to a stipulated bench trial. *Id.* at 28-30. The Commonwealth incorporated the evidence adduced at the suppression hearing into the record. *Id.* at 31. The trial court found Appellant guilty of driving while operating privileges were suspended/revoked – driving under the influence (DUI) related, third or subsequent offense. *Id.* at 32. The trial court sentenced Appellant to a mandatory term of six to 12 months of incarceration, with credit

for time served, plus a fine of $2,500.00.  *Id.* at 41.  This timely appeal resulted.[1]

On appeal, Appellant presents the following issue for our review:

Did the trial court err in denying Appellant's motion to suppress where the traffic stop was not supported by probable cause but was a pretextual stop?

Appellant's Brief at 7 (complete capitalization and lettering omitted).

Appellant argues that, in this case, "it is clear that the officer stopped [Appellant's] vehicle solely because of an obscured license plate[,] there was no investigation beyond the officer's initial observation of the license plate which would provide additional information as to whether a violation of [] the Motor Vehicle Code had occurred[, and, t]herefore, Officer Ladd was required to possess probable cause before initiating the traffic stop herein."  *Id.* at 11-12.  Appellant asserts that a review of the police dashboard camera video "does not confirm the [o]fficer's assertion that the license plate cover was tinted" and his license plate was plainly visible.  *Id.* at 12.  Instead, Appellant claims that Officer Ladd used the tinted license plate as "pretext to gather information for another investigation" because "another officer requested that [Officer Ladd] identify Appellant and his passenger."  *Id.* at 14.  More specifically, Appellant explains that Officer Ladd testified "quite clear[ly] that

_____

[1] Appellant filed a timely notice of appeal on July 13, 2022.  On July 14, 2022, the trial court issued an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied timely.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 21, 2022.

he wanted to have contact with Appellant and his passenger so he could identify them, as part of another investigation, wholly unrelated to Appellant's vehicle." *Id.* at 15. Finally, in further support of his claim that the traffic stop was pretextual, Appellant maintains that "Officer Ladd was grasping at straws in an attempt to justify the stop he initiated" because he originally told Appellant "he was pulled over because of a broken taillight." *Id.* at 14.

Our standard of review of the denial of a motion to suppress evidence is as follows:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on the appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the trial court are subject to plenary review.
>
> Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress. Also, it is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Wright*, 224 A.3d 1104, 1108 (Pa. Super. 2019) (internal quotations, original brackets, and citations omitted).

This Court has previously recognized:

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Article I, Section 8, of the Pennsylvania Constitution protect individuals from unlawful searches and seizures. It is well-established that "[a] vehicle stop constitutes a seizure under the Fourth Amendment." **Commonwealth v. Chase**, 960 A.2d 108, 113 (Pa. 2008), *citing* **Whren v. United States**, 517 U.S. 806, 809-810 (1996). "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." **Commonwealth v. Harris**, 176 A.3d 1009, 1019 (Pa. Super. 2017) (stating, "[t]he Fourth Amendment does not prevent police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if it is a minor offense"), *citing*, **Chase**, 960 A.2d at 113. "[A]ny violation of the Motor Vehicle Code legitimizes a stop, even if the stop is merely a pretext for an investigation of some other crime." **Harris**, 176 A.3d at 1020.

The United States Supreme Court has explained,

[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission" - to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are - or reasonably should have been - completed.

[The Supreme Court] concluded that the Fourth Amendment tolerated certain unrelated investigations that did not lengthen the roadside detention. [A] traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket. ... The seizure remains lawful only so long as unrelated inquiries do not measurably extend the duration of the stop. [A police] officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. [The police officer, however,] may not do so in a way that prolongs the stop, absent the reasonable

suspicion ordinarily demanded to justify detaining an individual.

Beyond determining whether to issue a traffic [citation, a police] officer's mission includes ordinary inquiries incident to the traffic stop. Typically[,] such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Rodriguez v. United States*, 575 U.S. 348, 354-355 (2015) (citations, original brackets, and some quotation marks omitted); *see also Commonwealth v. Malloy*, 257 A.3d 142, 149-150 (Pa. Super. 2021) (stating, "within the context of a lawful traffic stop, [`]mission related['] inquiries addressed to the traffic violations which originally prompted the detention [are permitted], as well as incidental inquiries aimed at ensuring the safe and responsible operation of vehicles on the highway").

Thus, in sum, even if a traffic stop is a pretext for an investigation of another unrelated crime, the traffic stop is lawful provided (1) a police officer observes a violation of the Motor Vehicle Code, even if a minor offense, and (2) the traffic stop lasts no longer than is necessary to effectuate the "mission" of the traffic stop, which is to address the Motor Vehicle Code violation and attend to related safety concerns. *See Whren*, 517 U.S. at 813 (stating, a police officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

*Commonwealth v. Vazquez*, 2023 WL 2470282, at *4–5 (Pa. Super. 2023)

(unpublished memorandum) (footnote omitted).[2]

The Motor Vehicle Code provides, in pertinent part, that "[i]t is unlawful

to display on any vehicle a registration plate which [] is illegible, obscured,

covered or otherwise obstructed in any manner at a reasonable distance

---

[2] *See* Superior Court I.O.P. 65.37(B) (Superior Court may rely on unpublished memorandum decisions filed after May 2, 2019 for their persuasive value).

[and/or] has a tinted plate cover." 75 Pa.C.S.A. § 1332(b)(3) and (5). Regarding Section 1332, this Court has previously determined that "[p]robable cause is established where, from a reasonable distance, characters on a registration plate are illegible or the plate is at least partially obscured." *Commonwealth v. Ruffin*, 282 A.3d 796, 801 (Pa. Super. 2022) (citation omitted), *appeal denied*, 290 A.3d 1271 (Pa. 2023).

> Here, the trial court concluded:

> In the present case, [the trial court] found the testimony of the officer involved, credible and convincing. Based on the facts indicated by the record, officers observed Appellant [] operating a green, Toyota truck with a tinted cover on its license plate. Initially[,] the officer observed the vehicle in the parking lot of the Holiday Inn Express. The license plate was so obscured that it was necessary for the officer to exit his vehicle to read the characters on the plate. [When] Appellant [drove out of] the parking lot, the officer followed for a short period of time, finding the license plate obstructed by the tinted cover. The officer's observation of the traffic violation [was] sufficient to establish probable cause. Not only was the court provided with credible[] and convincing evidence from the officer, the dash[board] camera video was admitted into evidence as [an] exhibit[.] The dash[board] camera video provides insight into the reason for the stop, and in this particular case it is evident the license plate was obstructed. For these reasons, [the trial court] found the officer had probable cause to effectuate the traffic stop in which Appellant [] was the driver.

Trial Court Opinion, 12/21/2022, at 5-6. The trial court further rejected Appellant's contention that the traffic stop was pretextual, opining "there was no significant ulterior motive for conducting the traffic stop [where] the officer provided specific, articulable facts to demonstrate probable cause existed,

describing his close proximity to the vehicle, and yet the license plate remained unintelligible." *Id.* at 8.

Upon review of the evidence presented at the suppression hearing, applicable law, and the trial court's decision, we discern no error in denying Appellant's request for suppression. Despite the fact that a tinted or obscured license plate is a minor infraction of the Motor Vehicle Code, it is unlawful to employ a tinted license plate cover or display a license plate that is illegible, obscured, covered or otherwise obstructed when viewed from a reasonable distance. Officer Ladd testified that he initiated the traffic stop at issue after he was unable to read Appellant's license plate from a reasonable distance, or one-car length away, because it was obscured and obstructed with a tinted cover. Officer Ladd could only read the license plate by exiting his police car and walking closer to Appellant's vehicle. Because Appellant was clearly in violation of the Motor Vehicle Code, Officer Ladd had probable cause to initiate a traffic stop. Moreover, the traffic stop did not last longer than necessary to address the Motor Vehicle Code violation and attend to related safety concerns. Here, Officer Ladd inquired about Appellant's driver's license to ensure his vehicle was operated safely and responsibly. As such, the traffic stop was lawful, even if initiated as a pretext for investigation of an unrelated crime. Finally, we note that upon our review of the video from Officer Ladd's body camera, upon approaching Appellant, Officer Ladd told Appellant that he was stopped for **both** a broken taillight and for having a tinted cover over his license plate. At the suppression hearing, Officer Ladd admitted that he

mistakenly told Appellant that he conducted the traffic stop for a broken taillight, but that it was only "one of the reasons" given for the stop. N.T., 6/16/2022, at 17; **see also id.** at 9 ("[U]pon viewing my video, his taillight was never out."). Officer Ladd testified that "the tinted cover was still the reason [he initiated] the [traffic] stop." **Id.** at 9. The trial court validly determined that Officer Ladd articulated factual observations that established probable cause to support the instant traffic stop. We discern no error. Accordingly, the trial court properly denied suppression and Appellant's sole appellate issue is without merit.

Judgment of sentence affirmed.

Judge King joins.

Judge McLaughlin files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2023