J-A21002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYNIKA LATAYA MOSES | : | |
| | : | |
| Appellant | : | No. 453 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 8, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0000447-2018

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 11, 2020**

Tynika Lataya Moses appeals from the January 8, 2019 judgment of sentence imposed upon her convictions for possession with intent to deliver a controlled substance ("PWID"), possession of heroin, possession of drug paraphernalia, criminal conspiracy to commit PWID, and prohibited sunscreening.  Appellant asserts that the trial court erred in not suppressing evidence related to the aforementioned convictions that police discovered while conducting a consent search of Appellant's vehicle.  We affirm.

On October 3, 2017, Trooper John Stepanski of the Pennsylvania State Police ("PSP") initiated a traffic stop of Appellant while she was driving her Dodge Charger on Interstate 78 in Northampton County, Pennsylvania.  ***See***

N.T. Omnibus Pretrial Hearing, 6/20/18, at 7-9. Trooper Stepanski testified[1] that he initially pulled over Appellant's vehicle based upon his observations that: (1) Appellant was traveling in the passing lane without any other vehicles present in the right lane; (2) the side windows of Appellant's vehicle were tinted such that Trooper Stepanski could not see inside the vehicle; and (3) Appellant's vehicle had a "police insignia sticker" above the state inspection sticker on the front windshield.[2] *Id*. at 7-9, 33-34. Upon approaching the vehicle, Trooper Stepanski observed Appellant occupying the driver's seat and an individual named Winston Johnson King[3] ("co-defendant") in the passenger

_____

[1] As will be discussed further, *infra*, all of the issues presented in this appeal relate to our review of the results of a suppression hearing. In this context, "[a]ppellate courts are limited to reviewing only the evidence the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." **Commonwealth v. Stilo**, 138 A.3d 33, 35-36 (Pa.Super. 2016). Accordingly, the factual recitation set forth herein is drawn exclusively from testimony presented at the suppression hearing.

[2] With respect to these observations, the trial court adjudged Appellant guilty of the summary offense of improper sunscreening after the jury trial concluded. **See** N.T. Trial, 10/31/18, at 516; **see also** 75 Pa.C.S. § 4524(e)(1). The Commonwealth's charge that Appellant was illegally driving in the passing lane was dismissed after the suppression hearing. **See** 75 Pa.C.S. § 3313(d)(1). Based on our review of the certified record, it appears that the Commonwealth never charged Appellant with having an illegal sticker on her front windshield. **But see** 75 Pa.C.S. § 4524(a) ("Obstruction on front windshield."). However, Appellant conceded the sticker was present on her vehicle on the day that Trooper Stepanski pulled her over. **See** N.T. Omnibus Pretrial Hearing, 6/20/18, at 106 (discussing post-arrest removal of sticker).

[3] Co-defendant was jointly tried with Appellant. He was similarly convicted of PWID, possession of a controlled substance, possession of drug paraphernalia, and criminal conspiracy to commit PWID. Co-defendant

seat. *Id*. at 10. Trooper Stepanski collected documentation and identification from Appellant and co-defendant, and informed Appellant of the reasons for the traffic stop. *Id*. at 10-11. He also learned that Appellant was traveling from Newark, New Jersey to West Virginia to visit her mother, who was at an undisclosed emergency room. *Id*. at 11, 18-19.

During his preliminary interactions with Appellant and co-defendant, Trooper Stepanski became suspicious based upon: (1) Appellant's representation that they were planning to drive back to Newark, New Jersey later that same day, an approximately eight-hour round trip; (2) his observation of several cell phones in the front seat area of the vehicle; (3) evasive and nervous behavior from co-defendant, including avoiding eye contact; and (4) his prior knowledge that Interstate 78 is a common corridor utilized for drug distribution. *Id*. at 12-13, 24, 68. After checking the identifications provided by Appellant and co-defendant and before continuing his investigation, Trooper Stepanski also learned that co-defendant had "an extensive history for narcotics."[4] *Id*. at 13.

_____

appealed to this Court, and we reversed his judgment of sentence on the basis that there was insufficient evidence. *See Commonwealth v. King*, 2019 WL 5704883, at 17 (Pa.Super. 2019) ("[T]he evidence presented by the Commonwealth did not demonstrate that [co-defendant] constructively possessed the drugs found in [Appellant's] vehicle. . . . [T]here was insufficient evidence to prove that he had 'a shared criminal intent' . . . ."). Appellant has not challenged the sufficiency of the evidence in this appeal.

[4] Based upon his testimony, the information available via Trooper Stepanski's in-vehicle computer made him aware of co-defendant's prior 2013 conviction

Based upon the aforementioned information, Trooper Stepanski requested backup and waited for it to arrive. He then returned to the vehicle without Appellant's documentation and asked her to step out of the vehicle. *Id*. at 13-14. Appellant complied with his request, and continued to speak with Trooper Stepanski at the rear of her car. Upon further questioning, Appellant stated that she was traveling to Wellsburg, West Virginia and that her mother's hospitalization related to arthritis. *Id*. at 17-19. Trooper Stepanski asked Appellant if there were any narcotics in her vehicle, and she laughingly responded in the negative. *Id*. at 20. While questioning her about potential contraband, Trooper Stepanski noticed Appellant nervously "fidgeting" as she tried to unwrap a cough drop. She was ultimately unable to do so, and put the cough drop in her mouth still fully wrapped. *Id*.

During this second round of questioning, Trooper Stepanski asked Appellant about her relationship with co-defendant. She stated co-defendant was her friend and an employee at her transmission shop. *Id*. at 19. Appellant also stated that co-defendant had brought a "white bag" with him on the trip, and that it was allegedly located "at his feet" on the passenger side of the vehicle. *Id*. at 19-20. Trooper Stepanski asked Appellant for consent to search her vehicle, and she asked why. Trooper Stepanski replied with "three specific reasons": (1) the short, turnaround nature of her trip; (2)

---

for PWID in Roanoke, Virginia, and a guilty plea to felony possession of a firearm in Salem, Virginia, on the day of the traffic stop. *See* N.T. Omnibus Pretrial Hearing, 6/20/18, at 66-67.

Appellant's "overly nervous behavior;" and (3) the "extensive criminal history" of co-defendant. *Id*. at 21. Immediately thereafter, Appellant verbally consented to the search. *Id*. at 21-22. Trooper Stepanski then read an official PSP consent-to-search form to Appellant, which she signed and dated to confirm her consent. *Id*. at 22-23.

Co-defendant exited the vehicle prior to the search, and Trooper Stepanski noticed that the white bag referenced by Appellant was neither in the passenger compartment, nor on co-defendant's person. *Id.* at 24. Upon searching the vehicle, Trooper Stepanski discovered three complete sets of New Jersey license plates. *Id*. at 24-26. During his search of the trunk, he observed that the series of bolts securing the carpet to the sidewall of the trunk showed heavy signs of wear. *Id*. at 26-27. Trooper Stepanski was able to remove the bolts and discovered "a white plastic bag containing a thousand bags of heroin" packaged for individual sale. *Id*. at 27-28.

The Commonwealth charged Appellant with various felonies, misdemeanors, and summary offenses in connection with these events. A jury trial took place from October 29-31, 2018. Ultimately, the jury found Appellant guilty of the aforementioned offenses. Appellant filed a timely notice of appeal. Both Appellant and the trial court timely complied with their obligations under Pa.R.A.P. 1925.

Appellant has raised three issues for our consideration:

1. Should all drugs and paraphernalia found in Appellant's vehicle and any statements made by Appellant to police be suppressed due to the illegal vehicle stop of Appellant?

2. Should all drugs and paraphernalia found in Appellant's vehicle and any statements made by Appellant be suppressed because, even if the initial vehicle stop was valid, the police lacked reasonable suspicion to detain Appellant beyond the point where the justification for the stop had expired?

3. Should the drugs and paraphernalia found in Appellant's vehicle and any statements made by Appellant be suppressed because, even after Appellant was directed to exit the vehicle until the point where she consented to the search of the vehicle, the police lacked reasonable suspicion to detain her?

Appellant's brief at 4.

All of Appellant's issues implicate the trial court's denial of Appellant's pretrial suppression motion. The following principles will guide our review:

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse [only] if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Arnold*, 932 A.2d 143, 145 (Pa.Super. 2007). Finally, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony." *Commonwealth v. Harris*, 176 A.3d 1009, 1018 (Pa.Super. 2017).

With respect to Appellant's first issue, she asserts that Trooper Stepanski did not possess the requisite level of suspicion to justify the instant traffic stop. *See* Appellant's brief at 19-23. Consequently, she argues that

- 6 -

all of the evidence discovered after the traffic stop must be suppressed as "fruit of the poisonous tree." **See Commonwealth v. Shabezz**, 166 A.3d 278, 289 (Pa. 2017).

As an initial matter, we note that the General Assembly has codified the level of suspicion that a police officer must possess before stopping a vehicle at 75 Pa.C.S. § 6308(b), which generally provides an officer must possess "reasonable suspicion that a violation of this title is occurring or has occurred" in order to stop a vehicle. However, "despite subsection 6308(b)'s reasonable suspicion standard, some offenses, by their very nature, require a police officer to possess probable cause before he or she may conduct a traffic stop." **Commonwealth v. Ibrahim**, 127 A.3d 819, 823 (Pa.Super. 2015). This Court has held that "not all vehicle offenses require further investigation to determine whether a motorist has committed that offense. . . [S]ome offenses, by their very nature, require a police officer to possess probable cause before he or she may conduct a traffic stop." **Id**.

Instantly, the trial court concluded that all of Trooper Stepanski's observations regarding Appellant's vehicle related to non-investigable violations of the Pennsylvania Vehicle Code and, thus, he was required to possess probable cause under Pennsylvania law. **See** Trial Court Opinion, 7/16/18, at 3-5. Our case law clearly provides "[f]or a stop based on [an] observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional stop." **Harris**,

*supra* at 1019; *see also Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super. 2010) (same). Our review of the relevant statutes confirms that the violations of the Vehicle Code referenced by Trooper Stepanski are of an ilk that are immediately observable and which require no additional investigation to establish. *See* 75 Pa.C.S. §§ 3313(d)(1), 4524(a), (e)(1). Thus, the trial court properly focused its assessment upon whether Trooper Stepanski possessed probable cause for the traffic stop.

In pertinent part, the trial court concluded that only Trooper Stepanski's observations with respect to the heavily tinted side windows of Appellant's vehicle were sufficient to establish probable cause with respect to a violation of § 4524(e)(1). *See* Trial Court Opinion, 7/16/18, at 5-6. A violation of this section is established when a vehicle has "any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing **or side window** of the vehicle." 75 Pa.C.S. § 4524(e)(1) (emphasis added).

Trooper Stepanski's testimony unambiguously states that the side windows of Appellant's were tinted heavily enough that he could not see inside of the vehicle.[5] *See* N.T. Omnibus Pretrial Hearing, 6/20/18, at 7, 8, 60. Appellant admits that the side windows of Appellant's vehicle were heavily

---

[5] This Court has held that "[t]here is no measurable amount of tint that renders a vehicle with tinted windows illegal." *Commonwealth v. Cartagena*, 63 A.3d 294, 305 n.26 (Pa.Super. 2013) (*en banc*).

tinted and obscured Trooper Stepanski's view of the interior of Appellant's vehicle. She argues, however, that the lack of tinting on her front windshield of her vehicle should be dispositive:

> Even if one accepts that the Trial Court's factual finding that Trooper Stepanski could not view the interior of the Charger through the side window, the legal conclusion drawn therefrom, *i.e.*, that probable cause existed to believe that [Appellant] committed a violation of Section 4524(e)(1), is erroneous. As Trooper Stepanski testified, the front windshield of the Charger did **not** have **any** window tint. Thus, because Trooper Stepanski was able to view the inside of the Charger through the front windshield, he was able to view the inside of the vehicle through the side wing, side window, **or the windshield.** It is plain that the purpose of 75 Pa.C.S. § 4524(e) is not to ensure that motorists have a clear view of the roadway through their windows to the exterior, but, rather, to ensure the safety of police officers looking through such windows from the outside into the interior. . . . Accordingly, because Trooper Stepanski admitted that he could see through the Charger's front windshield, [Appellant] was not in violation of 75 Pa.C.S. § 4524(e), and Trooper Stepanski therefore lacked probable cause to stop her vehicle on that ground.

Appellant's brief at 21-22 (emphasis in original). We disagree.

Appellant's argument is essentially a novel attempt to reinvent the statutory language of § 4524(e)(1), such that a violation of that statute is not established unless **every window** of the vehicle is heavily tinted. This argument ignores the plain language of the statute, which clearly evinces an intent to ensure that law enforcement officers can see the interior of vehicles from **all** potential vantage points. *See*, *e.g.*, 75 Pa.C.S. § 4524(e)(1). Furthermore, the language utilized is clearly disjunctive and provides that a violation may be established based on the tinting of the windshield, side wing, **or** side window of a vehicle. *Id*.; *see also Com. ex rel. Specter v. Vignola*,

285 A.2d 869, 871 (Pa. 1971) ("Generally speaking, 'or' means 'or,' not 'and.' . . . . We are bound to give 'or' its normal disjunctive meaning unless its ordinary meaning would produce a result that is absurd . . . ."). Finally, an *en banc* panel of this Court has previously stated that "[t]int is illegal if, from [the] point of view of the officer, he or she is unable to see inside of a vehicle through the windshield, side wing, **or side window**." ***Cartagena***, ***supra*** at 305 n.26 (emphasis added). Appellant's argument on this point is unavailing.

Contrary to Appellant's claims, this Court has held on numerous occasions that an officer's observation of tinted windows on a vehicle provides sufficient probable cause for a traffic stop. ***See***, ***e.g.***, ***Harris***, ***supra*** at 1019-20 (holding that officer possessed probable cause for a traffic stop where there was no dispute that the at-issue vehicle had "darkly tinted" windows in violation of § 4524(e)(1)); ***see also***, ***e.g.***, ***Commonwealth v. Randolph***, 151 A.3d 170, 176 (Pa.Super. 2016) ("[T]he evidence demonstrates that [the officer] had probable cause to believe that [the defendant] violated the Vehicle Code by driving with tinted windows."). In the present circumstances, the trial court credited Trooper Stepanski's uncontradicted[6] testimony that Appellant's vehicle's side windows were too darkly tinted to permit him to see inside of the vehicle and concluded that Trooper Stepanski had probable cause

---

[6] ***See*** N.T. Omnibus Pretrial Hearing, 6/20/18, at 97-108 (Appellant's testimony at the suppression hearing). The trial court also viewed portions of a video and audio recording of the traffic stop. ***Id***. at 29-37.

- 10 -

to effectuate a traffic stop. The factual findings of the trial court are supported by the record of the suppression hearing, and we discern no legal error in the trial court's analysis. Thus, no relief is due.

Second, Appellant asserts that Trooper Stepanski illegally extended his encounter with her beyond the completion of the initial traffic stop without sufficient "reasonable suspicion." **See** Appellant's brief at 23-51. Although she acknowledges that she consented to the search of her vehicle, Appellant argues that Pennsylvania law compels suppression where her initial encounter with police constituted an unlawful seizure. **See Commonwealth v. Strickler**, 757 A.2d 884, 888-89 (Pa. 2000) ("Where . . . a consensual search has been preceded by an unlawful seizure, the exclusionary rule requires suppression of the evidence . . . .").

This issue implicates the well-trod area of Pennsylvania law governing interactions between motorists and law enforcement and venerable prohibitions against illegal searches and seizures. As a general matter, a vehicle stop constitutes a seizure. **See Commonwealth v. Chase**, 960 A.2d 108, 112-13 (Pa. 2008). The initial seizure of Appellant's car via traffic stop was valid and appropriate based upon our discussion of probable cause.

However, our analysis does not conclude there. The gravamen of Appellant's argument is that Trooper Stepanski began a second, separate encounter with Appellant after the purpose of the initial traffic stop ended. Under Pennsylvania law, even an initially valid traffic stop may implicate

- 11 -

constitutional concerns when law enforcement subjects an individual to additional questioning beyond the scope of that stop:

> Where the purpose of an initial, valid traffic stop has ended and a reasonable person would have believed that he was free to leave, the law characterizes a subsequent round of questioning by the officer as a mere encounter. **See Strickler**, **supra** at 898. . . . However, where the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest.

**Commonwealth v. By**, 812 A.2d 1250, 1255-56 (Pa.Super. 2002). Instantly, Appellant asserts that any legitimate basis for the traffic stop expired once Trooper Stepanski had confirmed his observations regarding the tint on Appellant's side windows and assessed the validity of parties' identification information. **See** Appellant's brief at 29. We agree.

This Court has previously held that a "mere encounter" following an otherwise valid traffic stop is elevated to the level of an "investigative detention" where an officer continues questioning a defendant beyond the scope of the initial stop in circumstances that are analogous to this case. **See Commonwealth v. Dales**, 820 A.2d 807, 813-14 (Pa.Super. 2003) (holding that where an officer properly stops a motorist solely for "excessive tinting" on a vehicle's windows and the officer has fulfilled the purpose of the traffic stop, the encounter becomes an "investigative detention" where the officer continued questioning the suspect). Comparing **Dales** to the present circumstances, Trooper Stepanski's initial probable cause for the traffic stop expired after he questioned and warned Appellant regarding the tint of the

side windows of her vehicle and completed his identification check. *See* N.T. Omnibus Pretrial Hearing, 6/20/18, at 7-9. Thus, Appellant was subjected to a new, separate "investigative detention" when Trooper Stepanski asked her to step out of the vehicle and continued questioning her after the functional conclusion of the traffic stop. *Accord Dales*, 820 A.2d at 813-14.

With respect to investigative detentions that take place after an initially valid traffic stop, such a prolonged seizure of a motorist "must be justified by an articulable, reasonable suspicion that [the person seized] may have been engaged in criminal activity independent of that supporting [their] initial lawful detention." *Commonwealth v. Freeman*, 757 A.2d 903, 908 (Pa. 2000). The question of whether "reasonable suspicion" is present "must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the detainee of criminal activity." *Id*. With particular reference to this case, the requisite reasonable suspicion must arise from Trooper Stepanski's observations made **before** his decision to extend the traffic stop into an investigative detention. *See Dales*, *supra* at 814-15 (rejecting arguments that focused upon facts gleaned from a "second round of questioning" because such evidence was not known "at the time that the purpose of the initial traffic stop ended"); *see also Commonwealth v. Reppert*, 814 A.2d 1196, 1204 (Pa.Super. 2002) (holding that the "fundamental inquiry" concerning reasonable suspicion focuses upon "the moment of [intrusion]" (brackets in original)).

In order to establish reasonable suspicion, the Commonwealth must "articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." **Reppert**, **supra** at 1204.

The trial court has prepared a thorough summary of the factual predicates offered by Trooper Stepanski during the suppression hearing:

> During his initial encounter with [Appellant] and her passenger, [co-defendant], Trooper Stepanski obtained a variety of information that, taken together, caused him to believe that these two individuals were engaged in criminal drug activity. First, he was informed that they were travelling from New Jersey to West Virginia for a single-day trip that, in [Appellant's] own estimation, would be an eight-hour round trip. Second, he observed several cellular phones in the front seat, with only two persons in the vehicle. Third, after obtaining identification of both [Appellant] and [co-defendant], Trooper Stepanski learned that [co-defendant] has an extensive criminal history including drug distribution and unlawful firearm possession offenses, including [PWID] in what he understood to be the same general geographic area[7] to which they were traveling. Fourth, [co-defendant] failed

_____

[7] Trooper Stepanski initially believed that these convictions had originated from West Virginia, which he has characterized as an "honest mistake" that resulted from the limited information available via his in-cruiser computer coupled with the stress of the traffic stop. **See** N.T. Omnibus Pretrial Hearing, 6/20/18, at 69. He also averred that he repeated this mistaken belief multiple times while seeking assistance from the Pennsylvania Criminal Intelligence Center ("PaCIC") during the traffic stop, which did not correct him. **Id**. At the time of the traffic stop, Trooper Stepanski maintained he possessed a mistaken belief that co-defendant's prior narcotics conviction originated in West Virginia. **Id**. at 70. Appellant argues that co-defendant's prior conviction for narcotics and firearms offenses must be entirely disregarded due to Trooper Stepanski's factual mistake regarding the location of the prior convictions. However, we note that such a mistaken factual belief can still be

to make eye contact with Trooper Stepanski during their interaction. Finally, Trooper Stepanski was aware, through his experience as a law enforcement officer,[8] that I-78 is a common corridor of travel for drug distribution from the New York-New Jersey area to points south of Pennsylvania, including West Virginia. While we do not believe that any of these observations, taken alone, would justify a finding of [reasonable suspicion] to support [Appellant's] continued detention . . . we find that, **taken together**, the totality of the circumstances did provide Trooper Stepanski with reasonable suspicion to detain [Appellant] for the investigative detention in which she consented to the search.

Trial Court Opinion, 7/16/18, at 7-8 (emphasis added). The preceding summary is supported and confirmed by the certified record. *See* N.T. Omnibus Pretrial Hearing, 6/20/18, at 12-13, 24, 68.

We believe that the trial court's discussion aptly identifies the fatal deficiency underlying Appellant's argument. In pertinent part, Appellant's analysis erroneously focuses upon the individual points relied upon by the trial court in isolation from one another and fails to view their combined impact.

_____

a legitimate basis upon which to find reasonable suspicion. *See* ***Commonwealth v. Chase***, 960 A.2d 108, 120 (Pa. 2008) ("Indeed, even stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable."). As Appellant acknowledges in passing, Trooper Stepanski's mistake regarding the geographic location of co-defendant's conviction does not significantly diminish the implication of co-defendant's convictions at the time of the stop. *See* Appellant's brief at 44 ("[T]he reasonable suspicion calculus is not altered by treating [co-defendant's] 2013 convictions as if they occurred in West Virginia."). Based on our assessment of the certified record, we conclude that the mistake was a reasonable one.

8 Trooper Stepanski testified at the suppression hearing that he had been an officer of the PSP for nine years. *See* N.T. Omnibus Pretrial Hearing, 6/20/18, at 5-6. During that time, he participated in approximately 400 narcotics arrests, taken 250 hours of "drug and interdiction training," and completed a 16-hour "complete traffic stop training." *Id*.

- 15 -

*See* Appellant's brief at 37-51. The Commonwealth avers that this case is analogous to this Court's adjudication of *Commonwealth v. Green*, 168 A.3d 180, 184-85 (Pa.Super. 2017) (holding that a combination of factors were sufficient to establish reasonable suspicion, including observed nervous behavior, the officer's prior knowledge regarding drug corridor routes, and prior convictions for "assault and drug offenses"), and our Supreme Court's assessment in *Freeman*, *supra* at 40-43 (holding reasonable suspicion was established based upon officer's observations of irregularities in the interior of the vehicle, nervous behavior, a shortened trip itinerary, prior convictions for weapons, and prior knowledge regarding drug corridor routes). We agree. Properly viewed in totality, we conclude that the full scope of Trooper Stepanski's observations established the reasonable suspicion necessary to extend the traffic stop in this case. As such, we discern no legal error in the trial court's reasoning. Appellant's second claim is meritless.

Having concluded that Trooper Stepanski possessed reasonable suspicion based solely upon his observations prior to asking Appellant to exist her vehicle, we need not address Appellant's third issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/20