J-A23045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GIL SCOTT GROVE | : | |
| | : | |
| Appellant | : | No. 685 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 3, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000727-2022

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: DECEMBER 11, 2023**

Gil Scott Grove, Appellant, appeals from the judgment of sentence entered May 3, 2023, in the Court of Common Pleas of Berks County following his convictions for DUI-General Impairment; DUI-Highest Rate; Driving While Operating Privilege is Suspended or Revoked; Carrying and Exhibiting Driver's License on Demand; Registration Card to be Signed and Exhibited on Demand; Driving on Roadways Laned for Traffic; Prohibiting Text-Based Communications; and Careless Driving.[1] Appellant contends that the suppression court erred in denying Appellant's motion to suppress, which challenged the basis of the traffic stop. We conclude that the stop was legal

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1); 75 Pa.C.S. § 3802(c); 75 Pa.C.S.§ 1543(b)(1.1)(ii); 75 Pa.C.S. § 1511(a); 75 Pa.C.S. § 1311(b); 75 Pa.C.S. § 3309(1); 75 Pa.C.S. § 3316(a); and 75 Pa.C.S. § 3714(a).

because the troopers had reasonable suspicion to believe that Appellant was DUI. Accordingly, we affirm.

The relevant facts and procedural history are as follows: On January 3, 2022, Pennsylvania State Troopers Vincent Morgan and Collin Reber initiated a traffic stop of Appellant's vehicle leading to his arrest. Prior to trial, Appellant filed a motion to suppress claiming that the troopers did not possess the requisite probable cause nor reasonable suspicion to initiate a traffic stop of Appellant's vehicle. Pre-Trial Motion, 4/12/22, at 3. A hearing on the motion was held on July 26, 2022 at which the Commonwealth played footage of the traffic stop, and Trooper Morgan and Trooper Reber testified.

Trooper Morgan testified that he has been employed with the Pennsylvania State Police for six and a half years. Notes of Testimony of Suppression Hearing, 7/26/23, (hereinafter "N.T."), at 4. He testified that he observed a GMC Yukon cross over the lanes of traffic multiple times traveling southbound on U.S. 222 in Berks County. N.T. at 4. The vehicle then switched lanes without timely activating its turn signal. N.T. at 5. The Trooper indicated that these were violations of the Motor Vehicle Code, particularly section 3309(1), and that he activated his emergency lights after these observations. N.T. at 6. He also testified that his vehicle was close enough to Appellant's vehicle that he could observe the violations with his natural vision, and that he had to accelerate to close the distance between the two cars in initiating the stop. He did not observe Appellant speeding. N.T. at 10. Trooper Morgan testified that based on the totality of the circumstances at the time he

conducted the traffic stop, he had suspicion that the vehicle was being operated by a drunk driver. N.T. at 18. Trooper Morgan identified Appellant as the driver of the vehicle stopped. N.T. at 5.

Trooper Reber testified that he has been employed with the Pennsylvania State Police for about seven years and has handled multiple DUI cases. N.T. at 19, 21. He stated that on the night of the traffic stop in question, he observed Appellant's vehicle cross over the center dash line, cross over it again, and then "weave" back across the right side where it crossed over the fog line. N.T. at 19. He observed the vehicle change lanes and not activate its turn signal until it was in the middle of changing between lanes. N.T. at 20. Trooper Reber indicated that these were violations of the Motor Vehicle Code, particularly section 3309(1), and that the "very abrupt weave across the center line" further raised his suspicions that the driver of the vehicle was DUI of alcohol or narcotics. N.T. at 21; N.T. at 22, 24, 25. In his experience, drivers swerve in that way when trying to overcompensate for a "lack of ability to maintain their lane" when under the influence of a substance. N.T. at 21. On cross-examination, Trooper Reber estimated that the distance between Appellant's vehicle and the Troopers' vehicle was 300-500 feet upon observing the first violation and 150-200 feet upon observing the second. The troopers were traveling approximately fifty-five miles per hour and did not observe Appellant speeding. N.T. at 22. After the hearing, the suppression court denied Appellant's motion.

On February 16, 2023, a bench trial was held in which the parties stipulated, *inter alia,* that Appellant's BAC was 0.264% within two hours after having operated his vehicle on January 3, 2022; that this was Appellant's third DUI within ten years; that Appellant was driving at a time where his operating privilege was suspended; that Appellant did not possess a license or registration; and that he was using his cell phone while driving to send text messages. Stipulations of Fact, 2/16/23, at 1-2. Following the bench trial, Appellant was convicted on all charges and sentenced to fifteen months to seven years' incarceration. Appellant then filed this appeal raising the following questions for our review:

> (1)　Whether the trial court erred in denying Appellant's motion to suppress physical evidence based upon the officer's lack of reasonable suspicion of suspected driving under the influence to base the traffic stop of the Appellant's vehicle?
>
> (2)　Whether the court erred in denying the Appellant's motion to suppress physical evidence based upon the officer's lack of probable cause that a violation of the Motor Vehicle Code had occurred that justified the traffic stop of Appellant's vehicle?

Appellant's Br. at 4.

Our standard for reviewing an order denying a motion to suppress is well established. In reviewing a suppression court's denial of a suppression motion,

> we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. . . . Nonetheless, we exercise plenary review over the suppression court's conclusions of law.

*Commonwealth v. Johnson*, 107 A.3d 52, 93 (Pa. 2014) (citations omitted).

Appellant's questions concern the quantum of cause required in order for a law enforcement officer to stop a vehicle for an alleged violation of the Vehicle Code. The relevant statutory authority is 75 Pa.C.S. § 6308(b), which states:

> **(b) Authority of police officer**.--Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b) (bold in original).

This Court has stated,

> Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. . . . Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation.

*Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (citation omitted). Further, this Court has held that an officer must have probable cause "for a stop based on an observed violation of the vehicle code or another non-investigable offense." *Commonwealth v. Harris*, 176 A.3d 1009, 1009 (Pa. Super. 2017). "Thus, [section] 6308(b) requires only reasonable suspicion in support of a stop for the purpose of gathering information necessary to

enforce the Vehicle Code violation." ***Commonwealth v. Venable***, 200 A.3d 490, 498 (Pa. Super. 2018).

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

***Commonwealth v. Salter***, 121 A.3d 987, 993 (Pa. Super. 2015) (citations omitted).

Thus, since different crimes under the vehicle code require different levels of suspicion, in order to determine if reasonable suspicion or probable cause was required to be possessed by the troopers, it is necessary to determine what the suspected violation was, and if the stopping of the vehicle and the detention of Appellant served a stated investigatory purpose to the suspected violation.

Our review reflects that the troopers stopped Appellant's vehicle due to their suspicion of DUI. While both troopers testified to having observed several

Motor Vehicle Code violations of the nature that would not require further investigation, those violations led to the suspicion that Appellant was DUI. Trooper Morgan suspected at the time, "we may be dealing with a drunk driver." N.T. at 18. Trooper Reber stated that he activated his MVR because "we were under suspicion that we may have a DUI in front of us, someone who was possibly driving his vehicle under the influence of alcohol or narcotics." N.T. at 21. Trooper Reber also stated that in his training and experience, abrupt swerving like he observed from Appellant's vehicle "indicates someone who's compensating because of lack of ability to maintain their lane because of being under the influence of some substance." N.T. at 21. Finally, Trooper Reber stated, "we felt that the operator of the vehicle may have been under the influence of a substance, whether alcohol or narcotics or drugs, that we wanted to make a stop to investigate to prevent him, if he was, from possibly crashing his vehicle and harming someone else or himself." N.T. at 25. Therefore, the nature of the violation being investigated was a DUI.

As discussed above, a vehicle stop for suspicion of DUI may generally be based on reasonable suspicion, because such a stop may require further investigation. *See Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. 2008) (stating that "[e]xtensive case law supports the conclusion [that] a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible."). There is a "distinction between the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code."

*Commonwealth v. Busser*, 56 A.3d 419, 423 (Pa. Super. 2012) (citation and quotation marks omitted).

Since the troopers stopped Appellant's vehicle due to a suspicion of DUI, a violation which requires further investigation, they only needed to possess reasonable suspicion that Appellant was DUI in order to initiate a legal stop. *See Chase*, 960 A.2d at 116; *Feczko*, 10 A.3d at 1291. In determining whether Trooper Morgan and Trooper Reber possessed reasonable suspicion, "we must accord due weight to the specific reasonable inferences that [they are] entitled to draw from the facts in light of [their] experience." *Commonwealth v. Sands*, 887 A.2d 261, 272 (Pa. Super. 2005). Reasonable suspicion requires an evaluation of the totality of the circumstances. *Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011).

This Court has held that reasonable suspicion of DUI is formed when a qualified officer observes a vehicle weaving and drifting over the fog line. *See Commonwealth v. Walls*, 206 A.3d 537, 543 (Pa. Super. 2019); *see also Sands*, 887 A.2d at 272 (reasonable suspicion of DUI present where driver drifted over fog line by three feet three times on straight section of highway); *Commonwealth v. Hughes*, 908 A.2d 924, 927-28 (Pa. Super. 2006) (reasonable suspicion of DUI where defendant's vehicle swerved outside of his lane of travel twice in one mile); *Commonwealth v. Masters*, 737 A.2d 1229, 1232 (Pa. Super. 1999) (reasonable suspicion of DUI where defendant's vehicle repeatedly changed lanes for no reason). Trooper Morgan and Trooper

Reber were therefore justified in stopping Appellant's vehicle to investigate further to confirm or deny their suspicion.

Here, in explaining its ruling that reasonable suspicion of DUI supported the stop, the suppression court had the opportunity to view the testimonial and video evidence. The court concluded that Appellant's vehicle drifted back twice cross over the dash lines of the left and right lanes of travel and that it changed lanes two times without timely signaling the change. Tr. Ct. Op., 6/2/23, Exhibit A, at 2. The court also stated how the "very abrupt weave" across the center line created suspicion of DUI justifying a traffic stop to permit further investigation necessary to substantiate the suspicion. *Id.* at 2-3. The court, therefore, properly denied Appellant's suppression motion. Applying the applicable standard of review and considering comparable decisional law, we conclude that the record supports the court's factual findings and legal conclusion that reasonable suspicion of DUI supported Trooper Morgan and Trooper Reber's traffic stop of Appellant.

Appellant argues that because he was not charged with a violation of 75 Pa.C.S. § 3334, Turning Movements and Required Signals, it must be assumed that Appellant's tardiness in using his turn signal did not rise to the level of a chargeable offense, and thus, no probable cause existed for the vehicle stop. Appellant's Br. at 15. However, the fact of Appellant's tardiness in using his turn signal is relevant to the analysis for reasonable suspicion of DUI. Appellant further argues that since 75 Pa.C.S. § 3309(1), Roadways Laned for Traffic, requires only that an individual drive "as nearly as practicable entirely

within a single lane" and his crossing of the traffic lines was minor, no probable cause existed for a stop of the vehicle. Appellant's Br. at 18. Whether probable cause existed sufficient to stop the vehicle for a violation of that section becomes irrelevant because the nature of the violation being investigated was a DUI, and Appellant's movement between lanes of traffic is relevant to the analysis for reasonable suspicion of DUI.

Because we find that the troopers had sufficient reasonable suspicion of DUI, and the stop of Appellant's vehicle would have been legal if the troopers had *either* reasonable suspicion of DUI *or* probable cause of another Motor Vehicle Code violation, we will not address Appellant's second issue. Because the troopers' reasonable suspicion of DUI was proved by the Commonwealth at the suppression hearing, we will not reverse the trial court's conclusion of law that the stop of Appellant's vehicle was legal. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/11/2023